

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA          :

      -v-                           :

ARTHUR NIGRO,                     :
    a/k/a "Artie,"
    a/k/a "the Short Guy,"        :
    a/k/a "the Little Guy,"
ANTHONY ARILLOTTA,               :
    a/k/a "Bingy,"
STEVE ALFISI,                    :
    a/k/a "DD,"
MARCOS CAIO,                     :
    a/k/a "Mark,"
JAMES COUMOUTSOS, and            :
GEORGE COUMOUTSOS,
                       :

         Defendants.

- - - - - - - - - - - - - - - - - - -x

INDICTMENT

S1 09 Cr. 1239

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 2/11/10

## COUNT ONE
(Racketeering Conspiracy)

The Grand Jury charges:

### The Enterprise

1.  At all times relevant to this Indictment, ARTHUR NIGRO, a/k/a "Artie," a/k/a "the Short Guy," a/k/a "the Little Guy," ANTHONY ARILLOTTA, a/k/a "Bingy," and STEVE ALFISI, a/k/a "DD," the defendants, were associated with or were members of the Genovese Organized Crime Family of La Cosa Nostra (the "Genovese Organized Crime Family"). The Genovese Organized Crime Family was a criminal organization whose members and associates have engaged in numerous crimes including murder; assault; extortion; operating illegal gambling businesses; and financing, making, and

collecting extortionate extensions of credit (commonly known as "loansharking").

2.      The Genovese Organized Crime Family, including its leadership, membership, and associates, constituted an "enterprise," as that term is defined in Title 18, United States Code, Section 1961(4) -- that is, a group of individuals associated in fact.  The Genovese Organized Crime Family was an organized criminal group based in New York City that operated in the Southern District of New York, the District of Massachusetts, and elsewhere, and constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.  This enterprise was engaged in, and its activities affected, interstate and foreign commerce.

3.      The Genovese Organized Crime Family was part of a nationwide criminal organization known by various names, including the "Mafia" and "La Cosa Nostra" ("LCN"), which operated through entities known as "Families."  The Genovese Organized Crime Family took its name from one of its early leaders, Vito Genovese.  In addition to the Genovese Organized Crime Family, five other Families operated in the New York City and New Jersey area, namely, the Gambino Organized Crime Family of LCN, the Luchese Organized Crime Family of LCN, the Colombo

2

Organized Crime Family of LCN, the Bonanno Organized Crime Family of LCN, and the Decavalcante Organized Crime Family of LCN.

4.     The Genovese Organized Crime Family operated through groups of individuals known as "crews" and "regimes," most of which were based in New York City.  Each "crew" had as its leader a person known as a "Caporegime," "Capo," "Captain," or "Skipper," and consisted of "made" members, sometimes known as "Soldiers," "wiseguys," "friends of ours," and "good fellows." Soldiers were aided in their criminal endeavors by other trusted individuals, known as "associates," who sometimes were referred to as "connected" or identified as "with" a Soldier or other member of the Family.  Associates participated in the various activities of the crew and its members.

5.     Each Capo was responsible for supervising the criminal activities of his crew and provided Soldiers and associates with support and protection.  In return, the Capo typically received a share of the illegal earnings of each of his crew's Soldiers and associates, which was sometimes referred to as "tribute."

6.     Above the Capos were the highest-ranking members of the Genovese Organized Crime Family, commonly referred to as the "Administration."  The head of the Genovese Organized Crime Family was known as the "Boss," who was ordinarily assisted by an "Underboss" and a "Consigliere," or counselor.  The Boss,

3

Underboss, and Consigliere were responsible for, among other things, setting policy, resolving disputes between and among members of the Genovese Organized Crime Family, and resolving disputes between members of the Genovese Organized Crime Family and members of other criminal organizations. The Administration of the Genovese Organized Crime Family was also responsible for overseeing the criminal activities of the Family's Capos, Soldiers and associates, and was at times called upon to make decisions regarding those criminal endeavors.

7.   The Genovese Organized Crime Family has taken significant steps to protect and insulate its Boss and other Administration members from detection and scrutiny by law enforcement. These steps include appointing multi-member committees, and/or "panels," to oversee the daily affairs of the Genovese Organized Crime Family; and naming temporary, or "Acting" Bosses and other Administration positions. In addition, at various times relevant to this Indictment, members of the Genovese Organized Crime Family served on a committee or ruling panel, a group of high-ranking members of the Family who assisted and, at times, made decisions with or on behalf of the Boss and the Acting Boss of the Family.

8.   The Boss, Underboss, and Consigliere (whether official or acting) and, at times, the members of the ruling panel, supervised, supported, protected, and disciplined the

Capos, Soldiers, and associates, and regularly received reports regarding their various activities. In return for their supervision and protection, the Boss, Underboss, and Consigliere and members of the ruling panel typically received part of the illegal earnings of each crew.

<u>The Defendants</u>

9.   At various times relevant to this Indictment, ARTHUR NIGRO, a/k/a "Artie," a/k/a "the Short Guy," a/k/a "the Little Guy," the defendant, was a member of, and ultimately served as Acting Boss of, the Genovese Organized Crime Family. NIGRO, as a made member, Capo, and Acting Boss of the Genovese Organized Crime Family, participated in the commission of various crimes, including, among other things, conspiracy to murder; murder; assault; extortion; operating illegal gambling businesses; and loansharking. In addition to crimes committed with New York-based Genovese Crime Family members and associates, NIGRO participated in and profited from the illegal activities of the Soldiers and associates of Genovese Crime Family crews that were active in other areas, including Springfield, Massachusetts, and Boca Raton, Florida.

10.   At various times relevant to this Indictment, ANTHONY ARILLOTTA, a/k/a "Bingy," the defendant, was an associate of, and later a member of, the Genovese Organized Crime Family. As both an associate and a Soldier in the Genovese Organized

Crime Family, ARILLOTTA participated in the commission of various crimes, including, among other things, conspiracy to murder; murder; extortion; and operating illegal gambling businesses.

11.   At various times relevant to this Indictment, STEVE ALFISI, a/k/a "DD," the defendant, was a member of the Genovese Organized Crime Family.   As a Soldier within the Genovese Organized Crime Family, ALFISI participated in the commission of various crimes, including, among other things, assault; extortion; operating illegal gambling businesses; and loansharking.

<u>Purposes of the Enterprise</u>

12.   The purposes of the enterprise included the following:

a.   Enriching the leaders, members, and associates of the enterprise through, among other things, murder, assault, extortion, loansharking, the operation of illegal gambling businesses, and other crimes;

b.   Preserving and augmenting the power, territory, and financial profits of the enterprise through intimidation, violence, and threats of physical and economic harm;

c.   Keeping victims and citizens in fear of the enterprise and its leaders, members, and associates by: (i) identifying the enterprise, its members, and its associates with

6

La Cosa Nostra or the "Mafia;" (ii) causing and threatening to cause economic harm; and (iii) committing and threatening to commit physical violence; and

       d.   Protecting the members and associates of the enterprise from detection and prosecution by law enforcement, by intimidating and seeking reprisal against other members and associates who provided testimony or other information to law enforcement personnel.

<u>Means and Methods of the Enterprise</u>

     13.  Among the means and methods by which the defendants and other enterprise members and associates conducted and participated in the conduct of the affairs of the enterprise were the following:

       a.   To protect and expand the enterprise's business and criminal operations, members and associates of the enterprise murdered, threatened to murder, and assaulted persons who engaged in activity that jeopardized (i) the power and criminal activities of the enterprise and the power and criminal activities of fellow LCN Families, (ii) the power of leaders of the enterprise, and (iii) the flow of criminal proceeds to the leaders of the enterprise.

       b.   Members and associates of the enterprise promoted a climate of fear in the community through threats of economic harm and violence.

c.      Members and associates of the enterprise generated income for the enterprise through murder, assault, extortion, loansharking, gambling, and other crimes.

d.      Members and associates of the enterprise at times engaged in criminal conduct or coordinated their criminal activities with leaders, members, and associates of other LCN Families.  At other times, members and associates of the enterprise met with leaders, members, and associates of other LCN Families to resolve disputes over their criminal activities.

e.      To avoid law enforcement scrutiny of the enterprise's criminal activities, members, and associates of the enterprise conducted meetings surreptitiously, typically using coded language to make arrangements for meetings, meeting at rest stops along highways and at diners, and engaging in "walk and talks."

f.      Members and associates of the enterprise attempted to identify and did identify individuals suspected of providing, or deemed likely to provide, information to law enforcement about the enterprise, its members and activities, and about other LCN Families.

<u>The Racketeering Conspiracy</u>

14.  From at least in or about 2002, up to and including in or about February 2010, in the Southern District of New York and elsewhere, ARTHUR NIGRO, a/k/a "Artie," a/k/a "the

Short Guy," a/k/a "the Little Guy," ANTHONY ARILLOTTA, a/k/a "Bingy," and STEVE ALFISI, a/k/a "DD," the defendants, and others known and unknown, being persons employed by and associated with the racketeering enterprise described in Paragraphs 1 through 13 above, namely, the Genovese Organized Crime Family, which enterprise was engaged in, and the activities of which affected, interstate and foreign commerce, unlawfully, willfully, and knowingly combined, conspired, confederated, and agreed together and with each other to violate 18 U.S.C. § 1962(c), to wit, to conduct and participate, directly and indirectly, in the conduct of the affairs of that enterprise through a pattern of racketeering activity, as that term is defined in Sections 1961(1) and 1961(5) of Title 18, United States Code, consisting of multiple acts indictable under the following provisions of federal law:

      (a)   Title 18, United States Code, Section 1512, which prohibits murder for purposes of obstructing justice;

      (b)   Title 18, United States Code, Section 1951, which prohibits extortion;

      (c)   Title 18, United States Code, Sections 892 and 894, which prohibit making extortionate extensions of credit, and using extortionate means to collect and attempt to collect extensions of credit from debtors;

(d)   Title 18, United States Code, Section 1955, which prohibits operating an illegal gambling business; and

(e)   Title 18, United States Code, Section 1952, which prohibits interstate travel to promote, manage, and facilitate an unlawful activity;

and multiple acts involving murder, extortion, and operation of illegal gambling businesses chargeable under the following provisions of state law:

(a)   New York Penal Law, Sections 125.25 and 105.15, and Massachusetts General Laws Chapter 265, Section 1, and Chapters 274, Sections 2 and 7, involving murder; and

(b)   New York Penal Law, Sections 155.05(2)(e), 155.40(2) and 105.10, and Massachusetts General Law, Chapter 265, Section 25, involving extortion; and

(c)   New York Penal Law, Sections 225.00 and 225.10, involving illegal gambling.

15.   It was a part of the conspiracy that each of ARTHUR NIGRO, a/k/a "Artie," a/k/a "the Short Guy," a/k/a "the Little Guy," ANTHONY ARILLOTTA, a/k/a "Bingy," and STEVE ALFISI, a/k/a "DD," the defendants, agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the enterprise.

10

Special Sentencing Factors

16.   In or about Fall 2003, in the Southern District of New York and elsewhere, ARTHUR NIGRO, a/k/a "Artie," a/k/a "the Short Guy," a/k/a "the Little Guy," and ANTHONY ARILLOTTA, a/k/a "Bingy," the defendants, and others known and unknown, unlawfully, intentionally, and knowingly did commit an act involving murder and aided and abetted murder, to wit, with intent to cause the death of another person, Adolfo Bruno, NIGRO, ARILLOTTA, and others known and unknown did cause the death of Adolpho Bruno, in violation of New York State Penal Law, Sections 125.25 and 20.00 and Massachusetts General Laws Chapter 265, Section 1; and Chapter 274, Section 2.

17.   In or about Fall 2003, in the Southern District of New York and elsewhere, ARTHUR NIGRO, a/k/a "Artie," a/k/a "the Short Guy," a/k/a "the Little Guy," and ANTHONY ARILLOTTA, a/k/a "Bingy," the defendants, and others known and unknown, with malice aforethought, willfully, deliberately, and with premeditation, killed and aided and abetted the killing of Adolfo Bruno to prevent his communicating to a law enforcement officer and judge of the United States information relating to the commission and possible commission of federal offenses, including, among other things, crimes committed by members of the Genovese Organized Crime Family, in violation of Title 18, United States Code, Sections 1512(a)(1)(C), 1512(a)(3)(A) and 2.

(Title 18, United States Code, Section 1962(d).)

11

## COUNT TWO
(Racketeering)

The Grand Jury further charges:

18.    Paragraphs 1 through 13 of this Indictment are repeated and realleged and incorporated by reference as though fully set forth herein.

19.    From in or about 2002, up to and including in or about February 2010, in the Southern District of New York and elsewhere, ARTHUR NIGRO, a/k/a "Artie," a/k/a "the Short Guy," a/k/a "the Little Guy," ANTHONY ARILLOTTA, a/k/a "Bingy," and STEVE ALFISI, a/k/a "DD," the defendants, and others known and unknown, being persons employed by and associated with the racketeering enterprise described in Paragraphs 1 through 13 above, namely, the Genovese Organized Crime Family, which enterprise was engaged in, and the activities of which affected, interstate and foreign commerce, unlawfully, willfully, and knowingly did conduct and participate, directly and indirectly, in the conduct of the affairs of that enterprise through a pattern of racketeering activity, as that term is defined in Title 18, United States Code, Sections 1961(1) and 1961(5), that is, through the commission of the following racketeering acts:

### The Pattern of Racketeering

20.    The pattern of racketeering activity, as defined in Title 18, United States Code, Sections 1961(1) and 1961(5), consisted of the following acts:

12

**Racketeering Act One - Murder of Adolfo Bruno and Conspiracy to Murder Adolfo Bruno**

21.   ARTHUR NIGRO, a/k/a "Artie," a/k/a "the Short Guy," a/k/a "the Little Guy," and ANTHONY ARILLOTTA, a/k/a "Bingy," the defendants, committed the following acts of racketeering, any one of which alone constitutes the commission of Racketeering Act One:

a.   In or about Fall 2003, in the Southern District of New York and elsewhere, ARTHUR NIGRO, a/k/a "Artie," a/k/a "the Short Guy," a/k/a "the Little Guy," and ANTHONY ARILLOTTA, a/k/a "Bingy," the defendants, and others known and unknown, unlawfully, willfully, and knowingly did combine, conspire, confederate, and agree together and with others to murder Adolfo Bruno, in violation of New York State Penal Law, Sections 125.25 and 105.15 and Massachusetts General Laws Chapter 265, Section 1; and Chapter 274, Section 7.

b.   In or about Fall 2003, in the Southern District of New York and elsewhere, ARTHUR NIGRO, a/k/a "Artie," a/k/a "the Short Guy," a/k/a "the Little Guy," and ANTHONY ARILLOTTA, a/k/a "Bingy," the defendants, and others known and unknown, unlawfully, intentionally, and knowingly did commit an act involving murder and aided and abetted murder, to wit, with intent to cause the death of another person, Adolfo Bruno, NIGRO, ARILLOTTA, and others known and unknown did cause the death of Adolpho Bruno, in violation of New York State Penal Law, Sections

13

125.25 and 20.00 and Massachusetts General Laws Chapter 265, Section 1; and Chapter 274, Section 2.

        c.    In or about Fall 2003, in the Southern District of New York and elsewhere, ARTHUR NIGRO, a/k/a "Artie," a/k/a "the Short Guy," a/k/a "the Little Guy," and ANTHONY ARILLOTTA, a/k/a "Bingy," the defendants, and others known and unknown, with malice aforethought, willfully, deliberately, and with premeditation, killed and aided and abetted the killing of Adolfo Bruno to prevent his communicating to a law enforcement officer and judge of the United States information relating to the commission and possible commission of federal offenses, including, among other things, crimes committed by members of the Genovese Organized Crime Family, in violation of Title 18, United States Code, Sections 1512(a)(1)(C), 1512(a)(3)(A) and 2.

**Racketeering Act Two - Extortion Conspiracy and Extortion**

        22.   ARTHUR NIGRO, a/k/a "Artie," a/k/a "the Short Guy," a/k/a "the Little Guy," and ANTHONY ARILLOTTA, a/k/a "Bingy," the defendants, committed the following acts of racketeering, any one of which alone constitutes the commission of Racketeering Act Two:

      Extortion Under Federal Law

        a.    From at least in or about 2002, up to and including in or about April 2005, in the Southern District of New York and elsewhere, ARTHUR NIGRO, a/k/a "Artie," a/k/a "the Short

14

Guy," a/k/a "the Little Guy," and ANTHONY ARILLOTTA, a/k/a
"Bingy," the defendants, and others known and unknown,
unlawfully, willfully, and knowingly did combine, conspire,
confederate, and agree together and with others to commit
extortion, as that term is defined in Title 18, United States
Code, Section 1951(b)(2), by obtaining money and property from
and with the consent of another person, to wit, the owner of a
strip club located in Springfield, Massachusetts, which consent
would have been and was induced by the wrongful use of actual and
threatened force, violence, and fear, and thereby would and did
obstruct, delay, and affect commerce and the movement of articles
and commodities in commerce, as that term is defined in Title 18,
United States Code, Section 1951(b)(3), in violation of Title 18,
United States Code, Section 1951.

       b.    From at least in or about 2002, up to and
including in or about April 2005, in the Southern District of New
York and elsewhere, ARTHUR NIGRO, a/k/a "Artie," a/k/a "the Short
Guy," a/k/a "the Little Guy," and ANTHONY ARILLOTTA, a/k/a
"Bingy," the defendants, and others known and unknown, through
their positions as members and associates in the Genovese
Organized Crime Family of La Cosa Nostra and through other means,
unlawfully, willfully, and knowingly did commit extortion, and
aid and abet the commission of extortion, as that term is defined
in Title 18, United States Code, Section 1951(b)(2), by obtaining
money and property from and with the consent of another person,

to wit, the owner of a strip club located in Springfield, Massachusetts, which consent was induced by the wrongful use of actual and threatened force, violence, and fear, and thereby did obstruct, delay, and affect commerce and the movement of articles and commodities in commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3), in violation of Title 18, United States Code, Sections 1951 and 2.

### Extortion Under Massachusetts Law

c.   From at least in or about 2002, up to and including in or about April 2005, in the Southern District of New York and elsewhere, ARTHUR NIGRO, a/k/a "Artie," a/k/a "the Short Guy," a/k/a "the Little Guy," and ANTHONY ARILLOTTA, a/k/a "Bingy," the defendants, and others known and unknown, unlawfully, willfully, and knowingly did by verbal and written communication maliciously threaten an injury to the person and property of another, to wit, the owner of a strip club located in Springfield, Massachusetts, with intent thereby to extort money and pecuniary advantage, and with intent to compel such person to do an act against his will, in violation of Massachusetts General Laws Chapter 265, Section 25.

### Racketeering Act Three - Loansharking

23.   ARTHUR NIGRO, a/k/a "Artie," a/k/a "the Short Guy," a/k/a "the Little Guy," and STEVE ALFISI, a/k/a "DD," the defendants, committed the following acts of racketeering, any one

16

of which alone constitutes the commission of Racketeering Act Three:

a.    From at least in or about 2004, up to and including in or about 2008, in the Southern District of New York and elsewhere, ARTHUR NIGRO, a/k/a "Artie," a/k/a "the Short Guy," a/k/a "the Little Guy," and STEVE ALFISI, a/k/a "DD," the defendants, and others known and unknown, unlawfully, willfully, and knowingly did combine, conspire, confederate, and agree together and with each other to make extortionate extensions of credit, as that term is defined in Title 18, United States Code, Section 891, to wit, a loan of $100,000 to Victim-1, in violation of Title 18, United States Code, Section 892.

b.    From at least in or about 2004, up to and including in or about 2008, in the Southern District of New York and elsewhere, ARTHUR NIGRO, a/k/a "Artie," a/k/a "the Short Guy," a/k/a "the Little Guy," and STEVE ALFISI, a/k/a "DD," the defendants, and others known and unknown, unlawfully, willfully and knowingly made extortionate extensions of credit, as that term is defined in Title 18, United States Code, Section 891, to wit, a loan of $100,000 to Victim-1, in violation of Title 18, United States Code, Section 892.

c.    From at least in or about 2004, up to and including in or about 2008, in the Southern District of New York and elsewhere, ARTHUR NIGRO, a/k/a "Artie," a/k/a "the Short

Guy," a/k/a "the Little Guy," and STEVE ALFISI, a/k/a "DD," the defendants, and others known and unknown, unlawfully, willfully, and knowingly did combine, conspire, confederate, and agree together and with each other to use extortionate means to collect extensions of credit as that term is defined in Title 18, United States Code, Section 891, and to punish a person for the nonrepayment of such extensions of credit, to wit, NIGRO, ALFISI, and others agreed to threaten Victim-1 with economic harm if he did not repay a $100,000 loan, in violation of Title 18, United States Code, Section 894.

       d.    From at least in or about 2004, up to and including in or about 2008, in the Southern District of New York and elsewhere, ARTHUR NIGRO, a/k/a "Artie," a/k/a "the Short Guy," a/k/a "the Little Guy," and STEVE ALFISI, a/k/a "DD," the defendants, and others known and unknown, unlawfully, willfully, and knowingly used extortionate means to collect and attempt to collect extensions of credit, as that term is defined in Title 18, United States Code, Sections 891(1), 891(5), and 891(7), and to punish a person for the nonrepayment of such extensions of credit, to wit, NIGRO, ALFISI, and others threatened Victim-1 with economic harm if he did not repay a $100,000 loan, in violation of Title 18, United States Code, Sections 894 and 2.

18

**Racketeering Act Four – Extortion Conspiracy and Extortion**

24.   ANTHONY ARILLOTTA, a/k/a "Bingy," the defendant, and others known and unknown, committed the following acts of racketeering, any one of which alone constitutes the commission of Racketeering Act Four:

Extortion Under Federal Law

a.   In or about 2004, in the District of Massachusetts and elsewhere, ANTHONY ARILLOTTA, a/k/a "Bingy," the defendant, and others known and unknown, unlawfully, willfully, and knowingly did combine, conspire, confederate, and agree together and with others to commit extortion, as that term is defined in Title 18, United States Code, Section 1951(b)(2), by obtaining money and property from and with the consent of another person, to wit, the owner of a video poker machine business located in Massachusetts, which consent would have been and was induced by the wrongful use of actual and threatened force, violence, and fear, and thereby would and did obstruct, delay, and affect commerce and the movement of articles and commodities in commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3), in violation of Title 18, United States Code, Section 1951.

b.   In or about 2004, in the District of Massachusetts and elsewhere, ANTHONY ARILLOTTA, a/k/a "Bingy," the defendant, and others known and unknown, through his position

as a member in the Genovese Organized Crime Family of La Cosa Nostra and through other means, unlawfully, willfully, and knowingly did commit extortion, and aid and abet the commission of extortion, as that term is defined in Title 18, United States Code, Section 1951(b)(2), by obtaining money and property from and with the consent of another person, to wit, the owner of a video poker machine business located in Massachusetts, which consent was induced by the wrongful use of actual and threatened force, violence, and fear, and thereby did obstruct, delay, and affect commerce and the movement of articles and commodities in commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3), in violation of Title 18, United States Code, Sections 1951 and 2.

<u>Extortion Under Massachusetts Law</u>

c.   In or about 2004, in the District of Massachusetts and elsewhere, ANTHONY ARILLOTTA, a/k/a "Bingy," the defendant, and others known and unknown, unlawfully, willfully, and knowingly did by verbal and written communication maliciously threaten an injury to the person and property of another, to wit, the owner of a video poker machine business located in Massachusetts, with intent thereby to extort money and pecuniary advantage, and with intent to compel such person to do an act against his will, in violation of Massachusetts General Laws Chapter 265, Section 25.

## Racketeering Act Five - Loansharking

25.   ARTHUR NIGRO, a/k/a "Artie," a/k/a "the Short
Guy," a/k/a "the Little Guy," the defendant, and others known and
unknown, committed the following acts of racketeering, any one of
which alone constitutes the commission of Racketeering Act Five:

a.   From at least in or about 2002, up to and
including in or about November 2003, in the Southern District of
New York and elsewhere, ARTHUR NIGRO, a/k/a "Artie," a/k/a "the
Short Guy," the defendant, and others known and unknown,
unlawfully, willfully, and knowingly did combine, conspire,
confederate, and agree together and with each other to make
extortionate extensions of credit, as that term is defined in
Title 18, United States Code, Section 891, to wit, loans totaling
approximately $45,000 to various borrowers, in violation of Title
18, United States Code, Section 892.

b.   From at least in or about 2002, up to and
including in or about November 2003, in the Southern District of
New York and elsewhere, ARTHUR NIGRO, a/k/a "Artie," a/k/a "the
Short Guy," the defendant, and others known and unknown,
unlawfully, willfully, and knowingly made extortionate extensions
of credit, as that term is defined in Title 18, United States
Code, Section 891, to wit, loans totaling approximately $45,000
to various borrowers, in violation of Title 18, United States
Code, Sections 892 and 2.

c.    From at least in or about 2002, up to and including in or about November 2003, in the Southern District of New York and elsewhere, ARTHUR NIGRO, a/k/a "Artie," a/k/a "the Short Guy," the defendant, and others known and unknown, unlawfully, willfully, and knowingly advanced money and property, as a loan, investment, partnership and profit-sharing agreement, or otherwise, to another, with reasonable grounds to believe that it was the intention of that person to use the money and property so advanced directly and indirectly for the purpose of making extortionate extensions of credit, as that term is defined in Title 18, United States Code, Section 891, to wit, NIGRO advanced approximately $45,000 to other members and associates of the Genovese Organized Crime Family with reasonable grounds to believe that those individuals intended to make extortionate extensions of credit, in violation of Title 18, United States Code, Section 893.

d.    From at least in or about 2002, up to and including in or about November 2003, in the Southern District of New York and elsewhere, ARTHUR NIGRO, a/k/a "Artie," a/k/a "the Short Guy," the defendant, and others known and unknown, unlawfully, willfully, and knowingly did combine, conspire, confederate, and agree together and with each other to use extortionate means to collect extensions of credit as that term is defined in Title 18, United States Code, Section 891, and to

22

punish a person for the nonrepayment of such extensions of credit, to wit, NIGRO and others agreed to use threats of physical violence and actual violence in order to ensure repayment of loans totaling approximately $45,000 from various borrowers, in violation of Title 18, United States Code, Section 894.

e.   From at least in or about 2002, up to and including in or about November 2003, in the Southern District of New York and elsewhere, ARTHUR NIGRO, a/k/a "Artie," a/k/a "the Short Guy," the defendant, and others known and unknown, unlawfully, willfully, and knowingly used extortionate means to collect and attempt to collect extensions of credit as that term is defined in Title 18, United States Code, Section 891, and to punish a person for the nonrepayment of such extensions of credit, to wit, NIGRO and others used and attempted to use threats of physical violence and actual violence in order to ensure repayment of loans totaling approximately $45,000 from various borrowers, in violation of Title 18, United States Code, Sections 894 and 2.

## Racketeering Act Six - Operating Illegal Gambling Business

26.   ARTHUR NIGRO, a/k/a "Artie," a/k/a "the Short Guy," a/k/a "the Little Guy," and ANTHONY ARILLOTTA, a/k/a "Bingy," the defendants, and others known and unknown, committed

the following acts of racketeering, any one of which alone constitutes the commission of Racketeering Act Six:

a.   From at least in or about 2002, up to and including in or about April 2005, in the Southern District of New York and elsewhere, ARTHUR NIGRO, a/k/a "Artie," a/k/a "the Short Guy," a/k/a "the Little Guy," and ANTHONY ARILLOTTA, a/k/a "Bingy," the defendants, and others known and unknown, unlawfully, willfully, and knowingly did conduct, finance, manage, supervise, direct, and own all and part of an illegal gambling business, which operated illegal gambling activities, including illegal video gambling machines, bookmaking and sports betting, in violation of New York State Penal Law Sections 225.00, 225.05, and 225.10 and Massachusetts General Law Chapter 271, Section 16A, and which business involved five and more persons who did conduct, finance, manage, supervise, direct, and own all and part of it, and which business had been and remained in substantially continuous operation for a period in excess of thirty days and had gross revenues of $2,000 in a single day, in violation of Title 18, United States Code, Sections 1955 and 2.

b.   From at least in or about 2002, up to and including in or about 2005, in the Southern District of New York and elsewhere, ARTHUR NIGRO, a/k/a "Artie," a/k/a "the Short Guy," a/k/a "the Little Guy," and ANTHONY ARILLOTTA, a/k/a "Bingy," the defendants, did travel and use a facility in

interstate commerce with intent to distribute the proceeds of an unlawful activity and to promote, manage, establish, carry on, and facilitate the promotion, management, establishment and carrying on of an unlawful activity, to wit, unlawful activity involving gambling in violation of the laws of New York, Massachusetts, and the United States, and thereafter did perform and attempt to perform an act to promote, carry on, and facilitate the promotion and carrying on of said unlawful activity, to wit, NIGRO and ARILLOTTA traveled and caused others to travel between New York and Massachusetts in order, among other things, to transport the proceeds from illegal gambling operations from Massachusetts to New York, in violation of Title 18, United States Code, Sections 1952 and 2.

### Racketeering Act Seven - Operating Illegal Gambling Business

27.   From at least in or about 2007, up to and including in or about February 2010, in the Southern District of New York and elsewhere, STEVE ALFISI, a/k/a "DD," the defendant, and others known and unknown, unlawfully, willfully, and knowingly did conduct, finance, manage, supervise, direct, and own all and part of an illegal gambling business, which operated illegal gambling activities, namely a bookmaking and sports betting operation, in violation of New York State Penal Law Sections 225.00, 225.05, and 225.10, and which business involved five and more persons who did conduct, finance, manage,

supervise, direct, and own all and part of it, and which business
had been and remained in substantially continuous operation for a
period in excess of thirty days and had gross revenues of $2,000
in a single day, in violation of Title 18, United States Code,
Sections 1955 and 2.

(Title 18, United States Code, Section 1962(c).)

**COUNT THREE**
(Murder in Aid of Racketeering)

The Grand Jury further charges:

28.   At all times relevant to this Indictment, the
Genovese Organized Crime Family, as more fully described in
Paragraphs 1 through 13 of this Indictment, which are repeated,
realleged, and incorporated by reference as though set forth
fully herein, constituted an enterprise, as that term is defined
in Title 18, United States Code, Section 1959(b)(2), that is, a
group of individuals associated in fact, although not a legal
entity, which was engaged in, and the activities of which
affected, interstate and foreign commerce.  The Genovese
Organized Crime Family was an organized criminal group based in
New York City that operated in the Southern District of New York,
the District of Massachusetts, and elsewhere, and constituted an
ongoing organization whose members functioned as a continuing
unit for a common purpose of achieving the objectives of the
enterprise.

29. At all times relevant to this Indictment, the above-described enterprise, through its members and associates, engaged in racketeering activity, as that term is defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), namely, acts involving murder, extortion, and illegal gambling, in violation of New York State Penal Law; acts involving murder and extortion, in violation of Massachusetts General Laws; and acts indictable under Title 18, United States Code, Sections 892 and 894 (making and collecting extortionate extensions of credit); Title 18, United States Code, Section 1951 (extortion); Title 18, United States Code, Section 1952 (interstate travel in aid of racketeering enterprises); and Title 18, United States Code, Section 1955 (operation of an illegal gambling business).

30. In or about Fall 2003, in the Southern District of New York and elsewhere, as consideration for the receipt of, and as consideration for a promise and an agreement to pay something of pecuniary value from the Genovese Organized Crime Family, an enterprise engaged in racketeering activity, and for the purpose of gaining entrance to and maintaining and increasing position in the Genovese Organized Crime Family, ARTHUR NIGRO, a/k/a "Artie," a/k/a "the Short Guy," a/k/a "the Little Guy," and ANTHONY ARILLOTTA, a/k/a "Bingy," the defendants, and others known and unknown, unlawfully, intentionally, and knowingly did murder and aid and abet the murder of Adolfo Bruno, in violation of New York

Penal Law, Sections 125.25 and 20.00 and Massachusetts General
Laws Chapter 265, Section 1; and Chapter 274, Section 2.

(Title 18, United States Code, Sections 1959(a)(1) and 2.)

### COUNT FOUR
(Murder for the Purpose of Obstructing Justice)

The Grand Jury further charges:

31.   In or about Fall 2003, in the Southern District of
New York and elsewhere, ARTHUR NIGRO, a/k/a "Artie," a/k/a "the
Short Guy," a/k/a "the Little Guy," and ANTHONY ARILLOTTA, a/k/a
"Bingy," the defendants, and others known and unknown, with
malice aforethought, willfully, deliberately, and with
premeditation, killed and aided and abetted the killing of Adolfo
Bruno to prevent his communicating to a law enforcement officer
and judge of the United States information relating to the
commission and possible commission of federal offenses,
including, among other things, crimes committed by members of the
Genovese Organized Crime Family.

(Title 18, United States Code, Sections 1512(a)(1)(C),
1512(a)(3)(A) and 2.)

### COUNT FIVE
(Extortion Conspiracy)

The Grand Jury further charges:

32.   From at least in or about 2002, up to and
including in or about April 2005, in the Southern District of New
York and elsewhere, ARTHUR NIGRO, a/k/a "Artie," a/k/a "the Short
Guy," a/k/a "the Little Guy," and ANTHONY ARILLOTTA, a/k/a

"Bingy," the defendants, and others known and unknown, unlawfully, willfully, and knowingly did combine, conspire, confederate, and agree together and with others to commit extortion, as that term is defined in Title 18, United States Code, Section 1951(b)(2), by obtaining money and property from and with the consent of another person, to wit, the owner of a strip club located in Springfield, Massachusetts, which consent would have been and was induced by the wrongful use of actual and threatened force, violence, and fear, and thereby would and did obstruct, delay, and affect commerce and the movement of articles and commodities in commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3).

(Title 18, United States Code, Section 1951.)

## COUNT SIX
(Extortion)

The Grand Jury further charges:

33.   From at least in or about 2002, up to and including in or about April 2005, in the Southern District of New York and elsewhere, ARTHUR NIGRO, a/k/a "Artie," a/k/a "the Short Guy," a/k/a "the Little Guy," and ANTHONY ARILLOTTA, a/k/a "Bingy," the defendants, and others known and unknown, through their positions as members and associates in the Genovese Organized Crime Family of La Cosa Nostra and through other means, unlawfully, willfully, and knowingly did commit extortion, and aid and abet the commission of extortion, as that term is defined

in Title 18, United States Code, Section 1951(b)(2), by obtaining
money and property from and with the consent of another person,
to wit, the owner of a strip club located in Springfield,
Massachusetts, which consent was induced by the wrongful use of
actual and threatened force, violence, and fear, and thereby did
obstruct, delay, and affect commerce and the movement of articles
and commodities in commerce, as that term is defined in Title 18,
United States Code, Section 1951(b)(3).

(Title 18, United States Code, Sections 1951 and 2.)

### COUNT SEVEN
(Conspiracy to Make Extortionate Extensions of Credit)

The Grand Jury further charges:

34.  From at least in or about 2004, up to and
including in or about 2008, in the Southern District of New York
and elsewhere, ARTHUR NIGRO, a/k/a "Artie," a/k/a "the Short
Guy," a/k/a "the Little Guy," and STEVE ALFISI, a/k/a "DD," the
defendants, and others known and unknown, unlawfully, willfully,
and knowingly did combine, conspire, confederate, and agree
together and with each other to make an extortionate extension of
credit, as that term is defined in Title 18, United States Code,
Section 891, to wit, a loan of $100,000 to Victim-1.

(Title 18, United States Code, Section 892).

**COUNT EIGHT**
(Extortionate Extensions of Credit)

The Grand Jury further charges:

35.  From at least in or about 2004, up to and including in or about 2008, in the Southern District of New York and elsewhere, ARTHUR NIGRO, a/k/a "Artie," a/k/a "the Short Guy," a/k/a "the Little Guy," and STEVE ALFISI, a/k/a "DD," the defendants, and others known and unknown, unlawfully, willfully and knowingly made an extortionate extension of credit, as that term is defined in Title 18, United States Code, Section 891, to wit, a loan of $100,000 to Victim-1.

(Title 18, United States Code, Sections 892 and 2.)

**COUNT NINE**
(Conspiracy to Collect Extortionate Extensions of Credit)

The Grand Jury further charges:

36.  From at least in or about 2004, up to and including in or about 2008, in the Southern District of New York and elsewhere, ARTHUR NIGRO, a/k/a "Artie," a/k/a "the Short Guy," a/k/a "the Little Guy," and STEVE ALFISI, a/k/a "DD," the defendants, and others known and unknown, unlawfully, willfully, and knowingly did combine, conspire, confederate, and agree together and with each other to use extortionate means to collect extensions of credit as that term is defined in Title 18, United States Code, Section 891, and to punish a person for the nonrepayment of such extensions of credit, to wit, NIGRO, ALFISI

and others caused Victim-1 to fear physical and economic harm if Victim-1 did not repay a $100,000 loan.

(Title 18, United States Code, Section 894).

## COUNT TEN
(Extortionate Collection of Credit)

The Grand Jury further charges:

37.   From at least in or about 2004, up to and including in or about 2008, in the Southern District of New York and elsewhere, ARTHUR NIGRO, a/k/a "Artie," a/k/a "the Short Guy," a/k/a "the Little Guy," and STEVE ALFISI, a/k/a "DD," the defendants, and others known and unknown, unlawfully, willfully, and knowingly used extortionate means to collect and attempt to collect extensions of credit, as that term is defined in Title 18, United States Code, Sections 891(1), 891(5), and 891(7), and to punish a person for the nonrepayment of such extensions of credit, to wit, NIGRO, ALFISI, and others caused Victim-1 to fear physical and economic harm if Victim-1 did not repay a $100,000 loan.

(Title 18, United States Code, Sections 894 and 2.)

## COUNT ELEVEN
(Operation of An Illegal Gambling Business)

The Grand Jury further charges:

38.   From at least in or about 2001, up to and including in or about April 2005, in the Southern District of New York and elsewhere, ARTHUR NIGRO, a/k/a "Artie," a/k/a "the Short

Guy," a/k/a "the Little Guy," the defendant, and others known and unknown, unlawfully, willfully, and knowingly did conduct, finance, manage, supervise, direct, and own all and part of an illegal gambling business, which operated illegal gambling activities, namely a bookmaking and sports betting operation, in violation of New York State Penal Law Sections 225.00, 225.05, and 225.10 and Massachusetts General Laws Chapter 271, Sections 16A, 17, and 5, which business involved five and more persons who did conduct, finance, manage, supervise, direct, and own all and part of it, and which business had been and remained in substantially continuous operation for a period in excess of thirty days and had gross revenues of $2,000 in a single day.

(Title 18, United States Code, Sections 1955 and 2.)

### COUNT TWELVE
(Operation of An Illegal Gambling Business)

The Grand Jury further charges:

39.    From at least in or about 2007, up to and including in or about February 2010, in the Southern District of New York and elsewhere, STEVE ALFISI, a/k/a "DD," MARCOS CAIO, a/k/a "Mark," JAMES COUMOUTSOS, and GEORGE COUMOUTSOS, the defendants, and others known and unknown, unlawfully, willfully, and knowingly did conduct, finance, manage, supervise, direct, and own all and part of an illegal gambling business, which operated illegal gambling activities, namely a bookmaking and sports betting operation, in violation of New York State Penal

Law Sections 225.00, 225.05, and 225.10, which business involved five and more persons who did conduct, finance, manage, supervise, direct, and own all and part of it, and which business had been and remained in substantially continuous operation for a period in excess of thirty days and had gross revenues of $2,000 in a single day.

(Title 18, United States Code, Sections 1955 and 2.)

## COUNT THIRTEEN
(Interstate Travel in Aid of Racketeering)

The Grand Jury further charges:

40.  From at least in or about 2002, up to and including in or about April 2005, in the Southern District of New York and elsewhere, ARTHUR NIGRO, a/k/a "Artie," a/k/a "the Short Guy," a/k/a "the Little Guy," and ANTHONY ARILLOTTA, a/k/a "Bingy," the defendants, did travel and use a facility in interstate commerce with intent to distribute the proceeds of an unlawful activity and to promote, manage, establish, carry on, and facilitate the promotion, management, establishment and carrying on of an unlawful activity, to wit, unlawful activity involving gambling and extortion in violation of the laws of New York, Massachusetts, and the United States, and thereafter did perform and attempt to perform an act to promote, carry on, and facilitate the promotion and carrying on of said unlawful activity, to wit, NIGRO and ARILLOTTA traveled and caused others to travel between New York and Massachusetts in order, among

other things, to extort businesses located in Massachusetts, and to transport the proceeds from extortion and illegal gambling operations from Massachusetts to New York.

(Title 18, United States Code, Sections 1952 and 2.)

## FORFEITURE ALLEGATION

(As to Counts One and Two)

41.   The allegations contained in Counts One and Two of this Indictment are hereby repeated, realleged, and incorporated by reference herein as though fully set forth at length for the purpose of alleging forfeiture pursuant to the provisions of Title 18, United States Code, Section 1963.  Pursuant to Federal Rule of Criminal Procedure 32.2, notice is hereby given to ARTHUR NIGRO, a/k/a "Artie," a/k/a "the Short Guy," a/k/a the Little Guy," ANTHONY ARILLOTTA, a/k/a "Bingy," and STEVE ALFISI, a/k/a "DD," the defendants that the United States will seek forfeiture as part of any sentence in accordance with Title 18, United States Code, Section 1963 in the event of any of the defendants' conviction under Counts One and Two of this Indictment.

42.   The defendants, ARTHUR NIGRO, a/k/a "Artie," a/k/a "the Short Guy," a/k/a the Little Guy," ANTHONY ARILLOTTA, a/k/a "Bingy," and STEVE ALFISI, a/k/a "DD":

i.   have acquired and maintained interests in violation of Title 18, United States Code, Section 1962, which

interests are subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(1);

        ii.  have property constituting and derived from proceeds obtained, directly and indirectly, from racketeering activity, in violation of Title 18, United States Code, Section 1962, which property is subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(3).

        43.  The interests of the defendants, ARTHUR NIGRO, a/k/a "Artie," a/k/a "the Short Guy," a/k/a "the Little Guy," ANTHONY ARILLOTTA, a/k/a "Bingy," and STEVE ALFISI, a/k/a "DD," subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(1) and (a)(3), include, but are not limited to, a sum of money equal to the amount of proceeds obtained as a result of the foregoing offenses, in the amount of at least $1 million.

<u>Substitute Asset Provision</u>

        44.  If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendants-

        a.  cannot be located upon the exercise of due diligence;

        b.  has been transferred or sold to, or deposited with, a third party;

36

c.   has been placed beyond the jurisdiction of the court;

d.   has been substantially diminished in value; or

e.   has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section 1963(m), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property.

(Title 18, United States Code, Section 1963.)

## FORFEITURE ALLEGATION

(As to Counts Four through Ten and Thirteen)

45.   As a result of committing one or more of the offenses alleged in Counts Four through Ten and Thirteen of this Indictment, ARTHUR NIGRO, a/k/a "Artie," a/k/a "the Short Guy," a/k/a the Little Guy," ANTHONY ARILLOTTA, a/k/a "Bingy," and STEVE ALFISI, a/k/a "DD," the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461, all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the offense, including but not limited to at least approximately $1 million in United States currency, in that such sum in aggregate is property

37

representing the amount of proceeds obtained as a result of the offense.

<u>Substitute Asset Provision</u>

46.   If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

(1) cannot be located upon the exercise of due diligence;

(2) has been transferred or sold to, or deposited with, a third person;

(3) has been placed beyond the jurisdiction of the Court;

(4) has been substantially diminished in value; or

(5) has been commingled with other property which

cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of said defendants up to the value of the above forfeitable property.

(Title 18, United States Code, Section 981 and
Title 28, United States Code, Section 2461.)

### FORFEITURE ALLEGATION

(As to Counts Eleven and Twelve)

47.   As a result of committing one or more of the gambling offenses alleged in Counts Eleven and Twelve of this Indictment, ARTHUR NIGRO, a/k/a "Artie," a/k/a "the Short Guy,"

a/k/a the Little Guy," STEVE ALFISI, a/k/a "DD," MARCOS CAIO,

a/k/a "Mark," JAMES COUMOUTSOS, and GEORGE COUMOUTSOS, the

defendants, shall forfeit to the United States, pursuant to Title

18, United States Code, Section 981(a)(1)(C) and Title 28, United

States Code, Section 2461, all property, real and personal, that

constitutes or is derived from proceeds traceable to the

commission of the offense, and pursuant to Title 18, United

States Code, Section 1955(d), any property, including money, used

in violation of Title 18, United States Code, Section 1955.

<u>Substitute Assets</u>

        48.   If any of the above-described forfeitable

property, as a result of any act or omission of the defendants:

        (1)   cannot be located upon the exercise of due

diligence;

        (2)   has been transferred or sold to, or deposited

with, a third party;

        (3)   has been placed beyond the jurisdiction of the

court;

        (4)   has been substantially diminished in value; or

        (5)   has been commingled with other property which

cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 21,

United States Code, Section 853(p), to seek forfeiture of any

other property of the defendants up to the value of the
forfeitable property.

    (Title 18, United States Code, Sections 981 and 1955,
     and Title 28, United States Code, Section 2461.)


_____
FOREPERSON

_____
PREET BHARARA
United States Attorney

40

Form No. USA-33s-274 (Ed. 9-25-58)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

ARTHUR NIGRO, a/k/a "Artie,"
a/k/a "the Short Guy,"
a/k/a "the Little Guy,"
ANTHONY ARILLOTTA,
a/k/a "Bingy,"
STEVE ALFISI, a/k/a "DD,"
MARCOS CAIO, a/k/a "Mark,"
JAMES COUMOUTSOS, and
GEORGE COUMOUTSOS

Defendants.

INDICTMENT

S1 09 Cr. 1239

(Title 18, United States Code, Sections 892, 894, 1512 1951,
1955, 1959(a)(1), 1959 a)(5), 1962(c), 1962(d) and 2.)

_____
FOREPERSON

_____
PREET BHARARA
United States Attorney

2-11-10 Filed indictment. Under Seal A/W's issued for all Defendants
Pitman
U.S.M.J.